**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NEIL STEVENS, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| RUST-OLEUM CORPORATION, | |
| Defendant. | **JURY TRIAL DEMANDED** |

Plaintiff Neil Stevens (hereinafter, "Plaintiff"), through undersigned counsel, brings this action against Defendant Rust-Oleum Corporation ("Rust-Oleum" or "Defendant"), individually and on behalf of all others similarly situated, and allege as follows:

<u>**NATURE OF THE CASE**</u>

1. This is a consumer class action lawsuit brought by Plaintiff on behalf of purchasers of Rust-Oleum's water-based acrylic coating products marketed as Rust-Oleum RockSolid 2X, 6X, 20X, and Deck Start Wood Primer (collectively, "RockSolid" or the "Products").[1]

2. Outdoor wooden decks, concrete patios, and similar structures require periodic upkeep due to being exposed to the elements and wear-and-tear from surface contact. Such upkeep typically consists of staining, painting, or use of other coatings and protective or restorative applications.

---

[1] The list of specific Products involved in this lawsuit is subject to modification as Plaintiff develops the claims in this litigation during discovery.

1

3.     Rust-Oleum markets and sells these types of products under the brand "RockSolid" for use by consumers seeking to repair and revitalize their existing decking, patios, and other outdoor structures. On information and belief, the RockSolid products are substantially similar formulas and products with different branding. The Products are water-based acrylic coatings that purport to be high-quality deck re-surfacing products. Rust-Oleum aggressively markets these products to consumers as durable and weather resistant products that are capable of extending the life of decks and other similar surfaces.

4.     The Products are defective and prone to failure. Contrary to Rust-Oleum's advertising and representations, the Products are plagued by flaws that cause them to fail to adhere properly to underlying surfaces. Despite proper product application, the Products prematurely degrade, chip, bubble, peel, flake, strip, and otherwise deteriorate, failing to provide the advertised protection to the decks, patios, and other structures to which these products are applied.

5.     The product failures experienced by consumers who purchased the Products are at odds with Rust-Oleum's marketing representations, including promises and representations it makes regarding product quality and performance directly on the Products' labeling.

6.     Examples of images of Rust-Oleum's product labels for the Products are below:

 

 

7.    As seen above, Rust-Oleum touts that its Deck Start Wood Primer "promotes topcoat adhesion" and that it "works with any solid topcoat."

8.    Regarding its RockSolid 2X, 6X, and 20X Products, Rust-Oleum similarly claims that the Products are capable of "transform[ing] your deck in one day"; providing "durability"; are "ideal for . . . worn decks & patios"; provide "one coat coverage"; and provide "superior weather-resistance." The RockSolid Products even show a "before and after" image depicting a

deck with RockSolid applied that appears to be in great condition following application, which conveys that the Products work as depicted and advertised.

9.     For each of the Products, Rust-Oleum also touts that one gallon of Product is capable of providing coverage for a certain square footage. For the Deck Start Wood Primer, Rust-Oleum claims coverage of up to 450 square feet; up to 250 square feet for RockSolid 2X; up to 80 square feet for RockSolid 6X; and up to 40 square feet for RockSolid 20X.

10.    These statements are advertised right on the exterior labels for the Products themselves, which consumers are uniformly exposed to at the time of purchasing cans of RockSolid in-store (e.g., at Lowe's or other hardware and home goods stores). Similar or identical product descriptions, labeling, and advertising representations are and were present on the Rust-Oleum's website and the webpages where consumers purchased the Products, uniformly exposing them to Rust-Oleum's misstatements and subjecting them to Rust-Oleum's omissions.

11.    Rust-Oleum made numerous other representations on the Products' labels, on its website, and elsewhere regarding the high performance and quality of its products.

12.    These representations are false, misleading, and omit the truth about the performance of the Products. As alleged in more detail below, Plaintiff experienced product failure despite proper application of Rust-Oleum's Products and strict adherence to the Product application instructions.

13.    As consumers have now discovered, the Products do not live up to Rust-Oleum's promises and affirmative representations. Rather than providing durability, superior weather resistance, transforming decks in one day, the stated product coverage, and the ability to achieve the "before and after" result depicted on the Product containers, the Products deteriorate in a short time period. Consumers soon discover that the defective Products require removal and

replacement of the coatings in their entirety, since the Products fail to protect the deck itself. Thus, instead of ending the cycle of repainting and replacing, the Products hasten it.

14.     Making matters worse, when consumers complain about failed Products, they report that Rust-Oleum will only refund the purchase price or replace defective Products with more defective Products.

15.     The allegations in this lawsuit are nothing new for Rust-Oleum. Indeed, other of its similar products were the subject of a publicly settled class action that asserted similar allegations. *See In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, No. 1:15-cv-1364, MDL No. 2602 (N.D. Ill.). There is also currently litigation about other of its similar deck coating products branded under the Restore brand, and those cases are pending in this District. *See Cole v. Rust-Oleum Corp.*, No. 1:21-cv-02816 (N.D. Ill.); *Garrard v. Rust-Oleum Corp.*, No. 1:20-cv-00612 (N.D. Ill.).

16.     Rust-Oleum knew its Products are defective and prone to failure, yet it marketed and sold them to thousands of unsuspecting consumers, causing those consumers to suffer extensive damage to their decks and other structures, and to incur monetary damage.

17.     Rust-Oleum therefore knew (or should have known) that the Products suffer from a defect prior to placing the Products on the market for sale to consumers, but it omitted, concealed, and otherwise failed to disclose this material information, which it intended Plaintiff and other consumers to rely upon in deciding to purchase their Products.

18.     Despite knowing that the Products are flawed and prone to failure, Rust-Oleum continued to manufacture, market, and sell the Products to the public while making false representations about the Products' quality, durability, and other characteristics, and omitting the truth about the Products.

19.     As a result of Rust-Oleum's conduct, Plaintiff and members of the Class (defined below) have incurred substantial costs relating to their decks and other outdoor surfaces, have experienced property damage to their structures, and have otherwise been injured. Due to the flaws in the Products, Class members will continue expending considerable costs and time attempting to repair the problems. Many will end up having to pay for a total replacement of their decks or other structures.

20.     This class action seeks compensatory and punitive damages, injunctive and declaratory relief, and other relief as a result of Rust-Oleum's violations of state consumer protection laws, breaches of warranties, negligent misrepresentations and fraudulent concealment, and violations of other laws.

## THE PARTIES

**Plaintiff**

21.     Plaintiff Neil Stevens is an adult residing in Clovis, California.

**Defendant**

22.     Defendant Rust-Oleum Corporation is an Illinois corporation, with its corporate headquarters located in Vernon Hills, Illinois. Rust-Oleum is owned by, and is a subsidiary of, RPM International, Inc.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the amount in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), and greater than two-thirds of the Class members reside in states other than the state in which Defendant is a citizen.

24.     This Court has personal jurisdiction over Defendant because Defendant is in Illinois; Defendant is authorized to do business, and is conducting substantial business, in Illinois; Defendant has specifically marketed and sold the Products in Illinois; Defendant has sufficient minimum contacts with Illinois; and/or Defendant sufficiently avails itself of the markets of Illinois, through the promotion, sales, and marketing of RockSolid Products to render the exercise of jurisdiction by this Court permissible.

25.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is located and resides in this District; a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District; Defendant's misconduct alleged herein occurred in this District; and Defendant regularly conducts and transacts business in this District and is therefore subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

**A.     Overview of the RockSolid Products and Residential Coatings**

26.     Rust-Oleum is a manufacturer and seller of, among other things, protective paints and coatings for home and industrial use in the United States. Rust-Oleum is a flagship brand of RPM International, Inc., which is Rust-Oleum's parent company. Rust-Oleum designs, manufacturers, markets, advertises, warrants, and sells a variety of deck and other surface coatings, including paints, stains, and resurfacers.

27.     As is known in the coatings industry, consumers purchasing wood and concrete coating products for their homes want products that will withstand harsh weather conditions but maintain aesthetic appeal while lasting for a long time. With a large variety of wood surface coating products available in the marketplace, manufacturers must innovate to distinguish themselves from their competition.

28.     Outdoor wooden decks, docks, concrete patios, and similar structures typically require upkeep as they are exposed to the elements and to surface contact. Traditionally, that upkeep would have required application of a paint or stain on a yearly or other periodic basis, and then eventual replacement of the structure entirely.

29.     In recent years, acrylic coatings have come to the market such that homeowners now have the option of applying these "resurfacers"—a thicker, longer lasting coating than paint or stain. Resurfacers are used to extend the life of the surface by repairing splinters, filling cracks, and coating the deck to make it look revitalized or like new. Because resurfacers offer the promise of extending the life of a surface and avoid the hassle of traditional upkeep and/or the great expense and effort of replacing a structure altogether, these products are substantially more expensive than regular paints and stains.

30.     Rust-Oleum's RockSolid brand is one of the numerous brands of surfacing and resurfacing products currently on the market.

31.     Rust-Oleum's RockSolid Deck Start Wood Primer is a water-based acrylic coating primer product, intended to be applied to surfaces to prime for application of a top coating.[2]

32.     Rust-Oleum RockSolid 2X is a water-based polyurethane modified acrylic coating which, according to Rust-Oleum, is designed to resurface wood decks, concrete patios, and walkways.[3]

---

[2] RUST-OLEUM, *RockSolid Deck Start Wood Primer,* https://www.rustoleum.com/-/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Rocksolid/RSD-05_RockSolid_Deck_Start_Wood_Primer_TDS_1.ashx (last visited Oct. 19, 2021) (product technical data sheet).

[3] RUST-OLEUM, *RockSolid 2X Solid Stain,* https://www.rustoleum.com/-/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Rocksolid/RSD-38_RockSolid_2X_One_Coat_TDS.ashx (last visited Oct. 19, 2021) (product technical data sheet).

33. Rust-Oleum RockSolid 6X is a "high build" water-based acrylic coating which, according to Rust-Oleum, is designed to resurface moderately worn decks and patios.[4]

34. Rust-Oleum RockSolid 20X is a "high build" water-based acrylic coating which, according to Rust-Oleum, is designed to resurface heavily worn decks and patios.[5]

**B.     Rust-Oleum's Marketing of the RockSolid Products**

35. Rust-Oleum promotes its Products as being innovative and of high quality. On its website, Rust-Oleum claims "to be a global leader in manufacturing innovative coatings" and to produce "high-performance coatings."[6]

36. To distinguish itself in the marketplace, Rust-Oleum touts—on the product overviews on Rust-Oleum's website, on the Products' labels, on Product literature and technical data, on the websites where the Products are sold, and elsewhere—the Products' durability, weather-resistant, and restorative qualities.

37. Rust-Oleum marketed the Products as capable of replacing weathered decks, porches, patios and other structures, promoting deck facelifting and revitalization over deck replacement.

38. Rust-Oleum aggressively marketed the purported durability, performance, and quality of the Products.

---

[4] RUST-OLEUM, *RockSolid 6X Deck Coat,* https://www.rustoleum.com/-/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Rocksolid/RSD-56_RockSolid_6X_Deck_Coat_TDS.ashx (last visited Oct. 19, 2021) (product technical data sheet).

[5] RUST-OLEUM, *RockSolid 20X Deck Resurfacer,* https://www.rustoleum.com/-/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Rocksolid/RSD-55_RockSolid_20X_Deck_Resurfacer_TDS.ashx (last visited Oct. 19, 2021) (product technical data sheet).

[6] RUST-OLEUM, *Rust-Oleum's History,* https://www.rustoleum.com/pages/about-rust-oleum/our-history (last visited Oct. 19, 2021).

39. Rust-Oleum made all of the following representations regarding RockSolid Deck Start Wood Primer on its website, product literature, product labeling, and technical data sheets for that product:

- "simplifies prep and saves time";

- "works with any solid topcoat";

- "promotes topcoat adhesion";

- "covers up to 450 sq. ft. with one coat";

- "one coat required";

- "suitable for use on weathered, worn or previously coated wood decks"; and

- "works on weathered and worn wood."[7]

40. A photograph of a gallon pail RockSolid Deck Start Wood Primer is below, which contains numerous of these representations:

---

[7] RUST-OLEUM, *RockSolid Deck Start Wood Primer,* https://www.rustoleum.com/product-catalog/consumer-brands/rocksolid/deck/deck-start-wood-primer (last visited Oct. 19, 2021) (product overview); RUST-OLEUM, *RockSolid Deck Start Wood Primer,* https://www.rustoleum.com/-/media/DigitalEncyclopedia/Documents/RustoleumUSA/Product-Documents/ProductLabels/English/CBG/Rocksolid/RockSolid_DeckStartPrimer_2_label.ashx (last visited Oct. 19, 2021) (exterior product labeling); *see supra*, note 2 (product technical data sheet).



41.    Rust-Oleum made the following representations regarding its RockSolid 2X Solid

Stain on its website, product literature, product labeling, and technical data sheets for that product:

- "ideal for lightly worn decks";

- provides "extra durability";

- provides "one coat coverage";

- "superior weather-resistance and weatherproofing protection";

- capable of "resurfac[ing] wood decks, docks, concrete patios and walkways";

- "excellent weather resistance to extend the life of deck and patio surfaces";

- "one coat application";

- "one coat required";

- "excellent water repellency";

- "algae and mildew resistant coating";

- can "transform your deck in one day"; and

- "covers up to 40 sq. ft. with one coat."[8]

42.     Rust-Oleum made the following representations regarding RockSolid 6X Deck Coat on its website, product literature, product labeling, and technical data sheets for that product:

- can "transform your deck in one day";

- "ideal for moderately worn decks";

- provides "durability" and "enhanced durability";

- provides "one coat coverage";

- "superior weather-resistance and waterproofing protection";

- "fills hairline cracks";

- "covers up to 80 sq. ft. with one coat";

- "one coat required";

- "high build";

- can "resurface moderately worn decks and patios";

- "one coat coverage"; and

- "excellent weather resistance."[9]

---

[8] RUST-OLEUM, *RockSolid 2X Solid Stain,* https://www.rustoleum.com/product-catalog/consumer-brands/rocksolid/deck/2x-solid-stain (last visited Oct. 19, 2021) (product overview); https://www.rustoleum.com/-/media/DigitalEncyclopedia/Documents/RustoleumUSA/Product-Documents/ProductLabels/English/CBG/Rocksolid/rockSolid2xSolidStain_TintBase_1gal_label.ashx (last visited Oct. 19, 2021) (exterior product labeling); *see supra*, note 3 (product technical data sheet).

[9] RUST-OLEUM, *RockSolid 6X Deck Coat,* https://www.rustoleum.com/product-catalog/consumer-brands/rocksolid/deck/6x-deck-coat (last visited Oct. 19, 2021) (product overview); RUST-OLEUM, *RockSolid 6X Deck Coat,* https://www.rustoleum.com/-/media/DigitalEncyclopedia/Documents/RustoleumUSA/Product-

43.     Rust-Oleum made the following representations regarding RockSolid 20X Deck Resurfacer on its website, product literature, product labeling, and technical data sheet for that product:

- can "transform your deck in one day";

- "ideal for heavily worn decks";

- provides "durability" and "maximum durability";

- provides "one coat coverage";

- provides "superior weather-resistance and waterproofing protection";

- "fills 1/4" cracks";

- "covers up to 40 sq. ft. with one coat";

- "one coat required";

- designed to resurface heavily worn decks and patios";

- "one coat coverage"; and

- provides "excellent weather resistance."[10]

44.     Photographs of the RockSolid 2X Solid Stain, 6X Deck Coat, and 20X Deck Resurfacer Products are depicted below. The product labeling across these Products are substantially similar and contain numerous of these similar representations:

---

Documents/ProductLabels/English/CBG/Rocksolid/RockSolid6xDeckCoat_1gal_label.ashx (last visited Oct. 19, 2021) (exterior product labeling); *see supra*, note 4 (product technical data sheet).

[10] RUST-OLEUM, *RockSolid 20X Deck Resurfacer,* https://www.rustoleum.com/product-catalog/consumer-brands/rocksolid/deck/20x-deck-resurfacer (last visited Oct. 19, 2021) (product overview); RUST-OLEUM, *RockSolid 20X Deck Resurfacer,* https://www.rustoleum.com/-/media/DigitalEncyclopedia/Documents/RustoleumUSA/Product-Documents/ProductLabels/English/CBG/Rocksolid/RockSolid20xDeckResurfacer_label.ashx (last visited Oct. 19, 2021) (exterior product labeling); *see supra*, note 5 (product technical data sheet).






45. Rust-Oleum advertised RockSolid through video advertisements as well. In a promotional advertising video called "Transform your Deck in One Day with the RockSolid One

14

Coat Family!"[11] In the video, Rust-Oleum reinforces its claim that the RockSolid Products are able to "transform your deck in one day . . . "so you can enjoy more days on your deck."

46.     On its website, Rust-Oleum displays the following regarding its RockSolid coatings:



47.     The above image makes similar claims as RockSolid's product cannisters, but additionally states that the RockSolid coatings "offer long-lasting protection and superior weather-resistance for every deck and patio condition."

48.     The image above, as well as the product labels for the RockSolid Products, show a "before and after" picture depicting decks to which RockSolid Products have been applied. The decks in these images appear to be in great condition following application, which conveys that the Products work as depicted and advertised.

---

[11] https://www.youtube.com/watch?v=4npAxpHmcAU (last visited Oct. 19, 2021).

49. The various websites where consumers purchase the Products contain the same or similar statements and representations regarding the Products. For example, on The Home Depot's website, the following description is provided for RockSolid 2X[12]:

## Product Overview

Rust-Oleum RockSolid 2X Solid Stain is a water-based coating designed for resurfacing lightly worn decks and patios. RockSolid Deck in a Day Program eliminates the need for stripping and sanding. Use RockSolid Deck Cleaner and RockSolid Deck Primer prior to application for project completion in only 1 day.

- Ideal for application on new or lightly worn wood decks, docks, broom swept concrete and more
- 1 coat treatment covers up to 250 sq. ft. per gallon and cleans up easily with soap and water
- Offers a smooth, flat finish that helps hide surface imperfections
- Durable coating is 2 times thicker than ordinary paint, providing long lasting protection
- Advanced technology produces excellent adhesion, UV resistance and waterproofing protection
- Available in 60 trending colors for a perfect deck or patio
- Dries to touch in 4-6 hours; ready for light traffic and furniture replacement in 48 hours
- Dried coating creates a mildew and algae resistant film

50. Rust-Oleum's advertising for the RockSolid Products on The Home Depot's website and on other websites for the resellers where RockSolid is sold touts the same purported capabilities and qualities as the Products' labels, Rust-Oleum's website, and the technical data sheets for the Products.

---

[12] https://www.homedepot.com/p/Rust-Oleum-RockSolid-1-gal-Porch-Exterior-2X-Solid-Stain-319772/307428145 (last visited Oct. 19, 2021); *see also* https://www.homedepot.com/p/Rust-Oleum-RockSolid-1-gal-Sandstone-Exterior-6X-Deck-Coat-319661/307428087 (last visited Oct. 19, 2021) (RockSolid 6X); https://www.homedepot.com/p/Rust-Oleum-RockSolid-1-Gal-Cape-Cod-Gray-Exterior-20X-Deck-Resurfacer-319368/307428053 (last visited Oct. 19, 2021) (RockSolid 20X); https://www.homedepot.com/p/Rust-Oleum-RockSolid-1-Gal-Deck-Start-Exterior-Wood-Primer-Clear-312283/307428127?MERCH=REC-_-searchViewed-_-NA-_-307428127-_-N (last visited Oct. 19, 2021) (RockSolid Deck Start Wood Primer).

51.     Consumers paid a premium for the Products. A one-gallon pale of any of the Products retails for between $30-40.

52.     Each of the RockSolid Products are substantially similar products that serve the same or similar purposes, with similar formulas and branding. The Products are all water-based acrylic coatings that purport to be high quality deck resurfacing products.

**C.      Defendant Falsely Markets the Characteristics and Quality of the Products While Omitting the Truth About the Products**

53.     As identified above, Rust-Oleum prominently advertises and markets the purported high quality and durability of the Products, including directly on product labeling, on its website, and on the websites of its resellers (e.g., Home Depot, Lowe's).

54.     The Product labels all build on the same themes: that the Products are high quality, durable, superior, capable of resisting harsh weather, properly adhere, and provide lasting results so that consumers can resurface decks and other surfaces, rather than replacing these structures. Rust-Oleum touts that these qualities can be realized by applying one coat of the Products, and confirms on Product labeling that one gallon of Product will achieve a certain square footage of coverage. Defendant specifically advertises that the Products provide "durability," which consumers understand would allow the Products to resist cracking and peeling, and that the products, when applied properly, fill cracks and other wear and tear on decks and other similar surfaces, revitalizing those surfaces.

55.     Notably, the websites for Rust-Oleum's RockSolid distributors (e.g., The Home Depot) explicitly and uniformly tout that one quality of the RockSolid Products is "excellent adhesion."

56.     Rust-Oleum's advertising leads reasonable consumers to believe that the Products possess the stated qualities and capabilities, and are high quality and superior products, and Rust-Oleum has charged and continues to charge consumers premium prices for Products upon these pretenses, among others alleged herein.

57.     When consumers purchase the Products—whether at The Home Depot or Lowe's locations, online, or elsewhere—they are uniformly exposed to and see Rust-Oleum's representations regarding the Products' characteristics, which are visible on all Products' labeling (and in other in-store advertising).

58.     As discussed *supra*, when consumers purchase Products online, e.g., through The Home Depot's or the Lowe's website, they are also uniformly exposed to the same representations and advertising concerning the Products.

59.     The purpose of Defendant's advertising and marketing of the Products, and dissemination of advertising materials regarding Products, e.g., durable, superior coverage, excellent adhesion, weather resistant, waterproofing, suitable for use on worn decks, etc., could only be to persuade consumers that its Products possess these qualities and are functional with the ability to act as a weather barrier for many years and revitalize decks and other worn surfaces to make them look like new.

60.     Rust-Oleum's guarantees, promises, and other representations about its Products induced Plaintiff and other customers into purchasing the products and lead consumers to believe that the Products are durable, properly adhere to properly prepared surfaces, capable of performing as represented, and that Rust-Oleum stands behind its advertising and representations.

61.     However, the Products do not live up to these promises. Rust-Oleum's representations about the quality, durability, adhesion, and other characteristics of the Products are instead false and materially misleading.

62.     Rust-Oleum is aware and had actual or constructive notice that the Products are of inferior quality and susceptible to failure shortly after application, and that the Products do not, in fact, provide enhanced durability, do not properly adhere to surfaces, do not resist the elements, and do not revitalize decks, even when applied properly in compliance with the Product instructions.

63.     The Products routinely crack, chip, bubble, peel, strip, and otherwise fail or degrade, and they do so in weather conditions that the products are advertised as capable of resisting.

64.     Furthermore, despite Rust-Oleum's representations to the contrary, the Products do not transform decks in one day, and do not revitalize decks. As consumers routinely report that the Products chip, bubble, and do not fill cracks, and do not seal their structures, and permit moisture intrusion, often leading to mildew and degradation of the underlying structure.

65.     Despite knowledge that the Products are flawed and do not perform as represented, Rust-Oleum continued to market them as high-quality products with highly specific representations about the Products' performance and qualities, while masking and failing to disclose the Products' inferiority.

66.     Rust-Oleum knowingly and intentionally concealed and failed to disclose—notwithstanding statements on its websites, technical data sheets, advertisements, product labels, and elsewhere—that the Products often fail shortly, i.e., within weeks and months, after proper application. Indeed, the fact that the Products deteriorate at such a fast rate and will continue to

deteriorate quickly demonstrates a lack of durability and that the Products are not capable of excellent adhesion.

67. Defendant also made numerous material omissions in relevant advertisements and literature, and uniformly withheld important information relating to the design, reliability, and performance of the Products.

68. Purchasers of the Products made and make purchasing decisions based upon the information presented by Rust-Oleum, including on its website, in marketing literature, advertisements, commercials, product labels, and warranties.

69. Rust-Oleum made each of the above-described assertions, statements, representations, and warranties with the intent and purpose of inducing consumers to purchase and apply its RockSolid Products on structures throughout the United States. However, it knew that these representations were not true and that the Products would not function as promised and advertised.

70. Had Rust-Oleum not withheld and omitted material information about the design, reliability, and performance of the Products, Plaintiff and the members of the Class would not have purchased them, or would have paid considerably less for them than they did.

### D. Rust-Oleum Had Pre-Sale Knowledge of the Adhesion Defect

71. Rust-Oleum was aware and had actual or constructive notice that the Products contain an adhesion defect and that they do not adhere properly to surfaces despite proper application in compliance with the Products' instructions. Rust-Oleum knew this prior to selling the Products to Plaintiff and consumers.

72. This presale knowledge is established based upon pre-sale testing of the RockSolid Products, coupled with previous litigation regarding Rust-Oleum's other similar products, and

consumer complaints that began piling up immediately and shortly after taking the Products to market.

73.     Rust-Oleum engages in rigorous testing of all of its products prior to offering them to consumers on the open market. This includes with respect to the RockSolid Products. It acknowledges as much on its website, confirming "[w]e test the products in our laboratory under accelerated harsh conditions," and that Rust-Oleum "products must pass our rigorous testing . . . ."[13]

74.     Major manufacturers like Rust-Oleum use a variety of early warning systems and statistical analyses to detect problems before they can affect consumers. Defendant, in particular, has an extensive quality monitoring department that conducts product sampling and testing during production and before sale to ensure product performance, effectiveness, and efficiency. Quality improvement teams in this department also collect and actively monitor performance information in a database and provide feedback and interpretation to management and staff. These teams perform internal corporate quality audits that result in quality improvement initiatives. When problems are detected, Defendant may conduct a root cause analysis and take corrective actions. The results of this testing would have revealed to Defendant (before it began to sell the RockSolid Products) that RockSolid is not suitable for its marketed use.

75.     Rust-Oleum tested the Products through validation testing and application to the surfaces to which they are intended for application to replicate consumer use. It conducted field testing designed to simulate short-term and long-term RockSolid Product exposure to sunlight, temperature, humidity, precipitation, and other environmental factors prior to sale. These tests

---

[13] RUST-OLEUM, https://www.rustoleum.com/pages/licensing/certified-protection (last visited Oct. 19, 2021).

simulate real world, actual consumer use in a host of environmental and climate scenarios. Given the speed at which RockSolid begins to fail for consumers, the results of this testing would have informed Defendant that the RockSolid Products are susceptible to peeling, stripping, cracking, and other failures alleged herein, and are not suitable for their marketed use.

76.     As discussed *infra,* Rust-Oleum has also been routinely notified by customers that the Products do not function as advertised, through internet complaints, complaints to its resellers, complaints directly to Rust-Oleum, and complaints on product review pages

77.     Furthermore, this is not the first time Rust-Oleum has been sued regarding the defective nature and inferiority of its deck coating products. Similar products marketed and sold by Rust-Oleum under the "Restore" brand were previously the subject of a well-known class action lawsuit that asserted similar allegations regarding product failures in those Restore products. *See In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, No. 1:15-cv-1364, MDL No. 2602 (N.D. Ill.). Other "Restore" products that were not included in that litigation are also currently the subject of pending litigations in this District. *See Cole v. Rust-Oleum Corp.*, No. 1:21-cv-02816 (N.D. Ill.); *Garrard v. Rust-Oleum Corp.*, No. 1:20-cv-00612 (N.D. Ill.).

78.     This lawsuit also put Rust-Oleum on notice that its RockSolid Products are flawed and result in product failure.

79.     Rust-Oleum engaged in rigorous and harsh testing of the RockSolid Products prior to release, and due to the prevalence of the defect as reported by consumers, and previous issues with similar products, Rust-Oleum had knowledge, or should have known, that the RockSolid Products are defective and have adhesion issues.

80.     The amassed weight of these factors make it more likely than not that Rust-Oleum knew of the defective nature of the Products prior to sale, and that it would have learned of and been alerted to the adhesion issues during pre-sale testing.

**E.     Plaintiff's Experiences With the RockSolid Products**

**Plaintiff Neil Stevens**

81.     In or about late 2019, Plaintiff Neil Stevens purchased two pails of RockSolid 2X from his local Lowe's store in Clovis, California. He applied the RockSolid 2X to his covered deck at his home in Clovis.

82.     Mr. Stevens sought to resurface his lightly worn deck. The deck resurfacing project he planned involved replacing some deck board with matured deck board, and then using RockSolid 2X to resurface the entire deck.

83.     Prior to purchasing the RockSolid 2X Product, Mr. Stevens heard about Rust-Oleum and was aware of the company's supposed reputation for quality. Mr. Stevens saw materials online, including on Lowe's website, and observed the product labeling on the RockSolid 2X container in-store, touting that the product was capable of protecting and transforming his deck. Mr. Stevens was particularly drawn to the RockSolid 2X Product's purported qualities, including promises about durability, weather resistance, and being suitable for lightly worn decks, like his.

84.     Prior to purchase, Plaintiff heavily reviewed the product overview and description for the RockSolid 2X on the Lowe's website and then reviewed the Product's labeling in-store at Lowe's. Plaintiff saw specific representations regarding the qualities and characteristics of RockSolid 2X on the product container he purchased, namely that the product could "transform your deck in one day"; possessed "durability"; was suited ("ideal") for "lightly worn decks &

patios"; provided "one coat coverage"; and provided "superior weather resistance." Plaintiff saw the "before and after" picture on the Product's labeling, and understood that picture to mean (and relied upon the suggestion) that RockSolid is capable of working as depicted in the "before and after" photograph. Plaintiff Stevens also saw on the Lowe's website that RockSolid 2X is capable of "renew[ing] your deck in one day"; can "resurface lightly worn decks"; is "durable" and "hides imperfections and provides a smooth finish"; and "resists outdoor elements and provides premium waterproofing protection." Plaintiff relied upon these representations in making a decision to purchase the Products.

85.   In or about April 2019, Mr. Stevens coated his deck with RockSolid 2X. Prior to applying RockSolid 2X, Mr. Stevens prepared his deck in strict compliance with the product application instructions. He spent approximately thirty (30) hours working on resurfacing the deck with RockSolid 2X, including time spent preparing the surface and actually applying the Products.

86.   Despite that he owns a covered deck, Mr. Stevens applied the RockSolid 2X at a time when he knew it would not rain for the next 3-4 days, having confirmed as much in the weather forecast. It did not rain during at least the 48 hours after Mr. Stevens coated his deck with the RockSolid 2X.

87.   By approximately May 2020, Mr. Stevens noticed his deck and Product was peeling, forcing him to refinish and re-touch the deck. Then in or about March 2021, the Product began to fail again.

88.   Mr. Stevens' deck has become unsightly due to the Product failing. He has made numerous attempts to touch up his deck with RockSolid, but these attempts have failed, and the deck continues to deteriorate and degrade due to the faulty RockSolid 2X Product.

89.    Photographs of Mr. Stevens' deck coated with failed and degrading RockSolid 2X

Product are shown below:









90. To date, Mr. Stevens' deck remains unsightly, as the RockSolid 2X still cracks, chips, strips, and otherwise fails and degrades.

91. Despite spending much time properly preparing the deck, applying the Product, and reapplying new RockSolid 2X in hopes to fix his deck, Mr. Stevens will have pay a contractor or undertake the labor himself to strip the Product and resurface his deck.

92. Had Mr. Stevens known that RockSolid would not provide the performance advertised, and that RockSolid is not suitable for application to decks and other surfaces, he would not have purchased RockSolid 2X.

93. Mr. Stevens would consider buying additional Rust-Oleum RockSolid deck coating products in the future, but would not do so unless the RockSolid advertising, labeling, and other disclosures and statements regarding the Products are accurate.

94. Had Defendant disclosed to Mr. Stevens through marketing materials or product packaging that the RockSolid Products are defective and have the propensity to crack, peel, flake,

chip, bubble, strip, and generally prematurely fail and degrade, and that the Products do not actually perform as advertised, Mr. Stevens would not have purchased RockSolid.

95.     As a result of purchasing and applying the Products to his deck, Mr. Stevens has suffered harm, including damage to his deck, out of pocket expenses, and unreimbursed labor.

96.     To date, Plaintiff and Class members have not obtained an adequate remedy for the defective Products they purchased. Their decks and other surfaces to which they applied the Products are damaged and will continue to suffer further damage as the Products continue to degrade. Defendant has not offered to remedy this sustained and/or ongoing harm. It simply makes an inadequate offer to replace defective Products with more defective Products, or to issue a refund. Furthermore, Defendant continues to utilize inaccurate or misleading advertising and labeling in connection with the marketing and sale of the Products.

97.     Without the benefit of discovery, it is for all practical purposes unknown at this time whether a remedy at law or in equity will provide the appropriate full relief for Plaintiff and members of the Class. As a result, Plaintiff, at this stage of the litigation, seeks both restitution and a remedy at law, where the claims so permit. Further, Plaintiff seeks an injunction enjoining Defendant and its agents, servants, and employees, and all persons acting under, in concert with, or for it from selling defective Products without accurate product labeling and advertising, or a notice that the Products are defective.

**F.     Internet Complaints About the RockSolid Products**

98.     Plaintiff's circumstances are not an isolated incident. Indeed, the internet is replete with consumer complaints about the low quality and premature failure of the Products. The following represents a small sampling of numerous internet postings by disappointed and aggrieved purchasers of the Products (all sic and emphasis added):

(RockSolid Deck Start Wood Primer)

**not good. bubbled in rain after i followed the...** (1 star rating)
not good. bubbled in rain after i followed the directions properly.[14]

(RockSolid 2X)

**Ive applied this 3 times and its still not an..** (1 star rating)
Ive applied this 3 times and its still not an even coat. Wont be buying again.[15]

(RockSolid 2X)

**Disappointing product.** (1 star rating)
Followed directions to the letter. Used their cleaner - used their Primer - used 6x Roller. Surface didn't last a year. Have applied remaining deck coat this year - used their cleaner - their primer - used 6x roller but I have low expectations for this product. Cannot recommend.[16]

---

[14] KF, Comment to *Rust-Oleum RockSolid* (1-Gal. Deck Start Exterior Wood Primer Clear), HOMEDEPOT.COM (Apr. 13, 2019), https://www.homedepot.com/p/Rust-Oleum-RockSolid-1-Gal-Deck-Start-Exterior-Wood-Primer-Clear-312283/307428127?MERCH=REC-_-rv_gm_pip_rr-_-307428127-_-307428127-_-N&.

[15] HomeDepotCustomer, Comment to *Rust-Oleum RockSolid* (1 gal. Fieldstone Exterior 2X Solid Stain), HOMEDEPOT.COM (Aug. 29, 2021), https://www.homedepot.com/p/Rust-Oleum-RockSolid-1-gal-Fieldstone-Exterior-2X-Solid-Stain-319754/307428183?source=shoppingads&locale=en-US&pla&mtc=Shopping-B-F_D24-G-D24-024_011_EXT_STAIN_WS-Multi-NA-Feed-LIA-NA-NA-FY21_Exterior_LIA&cm_mmc=Shopping-B-F_D24-G-D24-024_011_EXT_STAIN_WS-Multi-NA-Feed-LIA-NA-NA-FY21_Exterior_LIA-71700000075828152-58700006498658431-92700058687514957&gclid=CjwKCAjw49qKBhAoEiwAHQVTo8_LUa_r4jDPAPq2e4WZQuokCoZ7hu9O-1qNhyuGQWHJI7fzD5ufgRoCEjwQAvD_BwE&gclsrc=aw.ds.

[16] BillA, Comment to *Rust-Oleum RockSolid* (1 gal. Fieldstone Exterior 2X Solid Stain), HOMEDEPOT.COM (Aug. 29, 2021), https://www.homedepot.com/p/Rust-Oleum-RockSolid-1-gal-Fieldstone-Exterior-2X-Solid-Stain-319754/307428183?source=shoppingads&locale=en-US&pla&mtc=Shopping-B-F_D24-G-D24-024_011_EXT_STAIN_WS-Multi-NA-Feed-LIA-NA-NA-FY21_Exterior_LIA&cm_mmc=Shopping-B-F_D24-G-D24-024_011_EXT_STAIN_WS-Multi-NA-Feed-LIA-NA-NA-FY21_Exterior_LIA-71700000075828152-58700006498658431-92700058687514957&gclid=CjwKCAjw49qKBhAoEiwAHQVTo8_LUa_r4jDPAPq2e4WZQuokCoZ7hu9O-1qNhyuGQWHJI7fzD5ufgRoCEjwQAvD_BwE&gclsrc=aw.ds.

(RockSolid 2X)

**does not hold up** (1 star rating)

So diappointed. Did thid fall 2020 and here is what it looks like now. Spent good money having a. Professional put this down, now i have to pay all over again ![17]

_____

(RockSolid 2X)

**Way too thin** (1 star rating)

This product is pretty horrible. It didn't cover anyrhing at all.[18]

(RockSolid 6X)

**Horrible** (1 star rating)

I purchased this product several days ago and installed it. Hours and hours of labor! I used the deck coat primer also. I followed the directions to the letter. I had great weather for over 48 Hours and a light rain came after the 48 hours and it bubbled! What am I to do now? It's a horrible product! I do not like to write bad reviews but this product warrants it. I implore you to seek another product if you wish to save yourself a headache.[19]

(RockSolid 6X)

**Only last a few months** (1 star rating)

---

[17] pattye, Comment to *Rust-Oleum RockSolid 2x*, LOWES.COM (Apr. 1, 2021), https://www.lowes.com/pd/Rust-Oleum-RockSolid-Tintable-Tintable-Resurfacer-Actual-Net-Contents-116-fl-oz/1000437195?cm_mmc=shp-_-c-_-prd-_-pnt-_-google-_-lia-_-220-_-exteriorstains-_-1000437195-_-0&placeholder=null&ds_rl=1286981&gclid=CjwKCAjw7J6EBhBDEiwA5UUM2oQmk_ezl5H0RxN5F7zdXrV0oYlwkaApQjw9_nToe177TslkAcNduRoCE74QAvD_BwE&gclsrc=aw.ds.

[18] amber, Comment to *Rust-Oleum RockSolid 2x*, LOWES.COM (Apr. 6, 2021), https://www.lowes.com/pd/Rust-Oleum-RockSolid-Tintable-Tintable-Resurfacer-Actual-Net-Contents-116-fl-oz/1000437195?cm_mmc=shp-_-c-_-prd-_-pnt-_-google-_-lia-_-220-_-exteriorstains-_-1000437195-_-0&placeholder=null&ds_rl=1286981&gclid=CjwKCAjw7J6EBhBDEiwA5UUM2oQmk_ezl5H0RxN5F7zdXrV0oYlwkaApQjw9_nToe177TslkAcNduRoCE74QAvD_BwE&gclsrc=aw.ds.

[19] LOWES, *Rust-Oleum RockSolid Tiltable Resurfacer (1-Gallon)*, https://www.lowes.com/pd/Rust-Oleum-RockSolid-Tintable-Tintable-Resurfacer-Actual-Net-Contents-116-fl-oz/1000437191 (last visited May 4, 2021).

The product was applied in the fall of 2018, by spring of 2019 this was the condition of my deck [depicting stripped and peeled deck].[20]

---

(RockSolid 6X)

**Bubbles, wast of money and time** (1 star rating)

am very disappointed with this product. I followed all directions and had proper drying time. This was a lot of time and money wasted. Now I'll have to either re sand and paint or replace my whole decking, which will cost more money & time. It bubbles every time it rains and starts to peel. It looks absolutely terrible. I went on the Rust-Oleum web site and filled out the product issue form, but never heard back. I'm sure they know that their product is a wast of money and will try anything to...[21]

---

(RockSolid 6X)

**Waste of Time, Effort and Money** (1 star rating)
Product is absolute garbage. Followed directions precisely. We had a solid 5 days of warm dry weather after application before our next rain storm. The first rain post application completely ruined my deck. This product bubbled and peeled immediately. Even changed color.[22]

---

(RockSolid 6X)

**Rustoleum 6X deck resurfacer** (1 star rating)
A waste of money. Looks like it fills small cracks...until it has dried. Cracks reappear even with a second coat. I Would try the 20x version but it is not available in local stores. I was using Kilz Over Armor but ran out and it covered

---

[20] Lowes, *Rust-Oleum RockSolid Tintable Resurfacer (1-Gallon),*
https://www.lowes.com/pd/Rust-Oleum-RockSolid-Tintable-Tintable-Resurfacer-Actual-Net-Contents-116-fl-oz/1000437191 (last visited May 4, 2021).

[21] Lowes, *Rust-Oleum RockSolid Tintable Resurfacer (1-Gallon),*
https://www.lowes.com/pd/Rust-Oleum-RockSolid-Tintable-Tintable-Resurfacer-Actual-Net-Contents-116-fl-oz/1000437191 (last visited May 4, 2021).

[22] https://www.homedepot.com/p/Rust-Oleum-RockSolid-1-Gal-White-Exterior-6X-Deck-Coat-319669/307428066 (last visited Oct. 20, 2021).

EXCELLENT. Unfirtunately, but the product has sold out everywhere…even online. Tried the Rustoleum 6X but NO-GO.[23]

---

(RockSolid 6X)

**Horrible product** (1 star rating)
looked great the first 6 months. then it started peeling up . worst $ I've ever spent. I want to know how to get the rest off that hasn't peeled up off?[24]

---

(RockSolid 6X)

**Garbage** (1 star rating)
Terrible. I quit after about 30 minutes of trying to apply this stuff. It is the consistency of wet concrete. When applied over Deck Start primer, it is like trying to paint on a waxed floor. The roller just pushes it around in piles. I assumed the purpose of the primer was for better adhesion. It might work if you put on 3 or 4 coats.[25]

---

(RockSolid 6X)

**Don't waste your money** (1 star rating)
This stuff wa a waste of time to put down. literally, began peeling off a month after application. I cleaned the deck beforehand and everything. Now I need to power wash and do it again.[26]

---

(RockSolid 6X)

---

[23] https://www.amazon.com/product-reviews/B074QTJGMX/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar.

[24] https://www.amazon.com/product-reviews/B074QTJGMX/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar.

[25] https://www.amazon.com/product-reviews/B074QTJGMX/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar.

[26] https://www.amazon.com/product-reviews/B074QTJGMX/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar.

**Don't use** (1 star rating)

I used the 6X product on my three decks. Per Rust-Oleum's directions, I cleaned the decks with the company's cleaning product, then primed decks with its deck primer. Waited until no rain was in the forecast to apply the deck coating. Used the special roller the company recommended to apply. Seemed to be going on too thick but using the roller it was impossible to prevent that. Took three days to dry to the touch. Then, when I tested the hardness by dragging my finger across the deck (fairly softly, not pushing down hard) it left a white line on the deck. Much worse mark left if you move deck furniture from one spot to another on the deck. It takes forever for this product to become hard. I'm not sure mine has hardened yet and it's been on more than two weeks. This is a labor-intensive product that gives you results that fall far short of satisfactory. Will never use again. Contacted Rust-Oleum customer service and got a lot of who-shot-John blah-blah.[27]

---

(RockSolid 6X)

im painting my deck for the first time using rustoleum rock solid deck coat 6x and it is the thickest hardest to apply product ever ,, but ive bought 2 gallons so i have to use it ,, one gallon is suppose to cover 80 square foot but i will be lucky to get 60 square foot per gallon ,, and there is no way to thin it down and you have to use the roller that is made for it,,, needless to say im not satisfied with this product at all,[28]

---

(RockSolid 20X)

**Disappointed**

I watched all of the Rust-Oleum videos to make sure that I applied this product correctly. I purchased all of the recommended supplies, from the deck cleaner to the roller cover. I painted Monday morning, & then let it dry (48 hrs before rain). I noticed that it didn't look great as it dried—the color was uneven and it **looked bubbly**. It rained Wednesday, and after the rain cleared I checked the deck, & m I am devastated. The paint is not hard, but gooey and **bubbly all over. I can see that**

---

[27] https://www.amazon.com/product-reviews/B0719LCF3H/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all _reviews#reviews-filter-bar.

[28] https://www.deckstainhelp.com/rust-oleum-deck-restore-review-updated/#comment-98193.

**it is going to peel**. This wasn't a cheap product, & I expected a much better finish. Not sure what I'm going to do now.[29]

---

(RockSolid 20X)

**Not Happy**

Applied 20x Product two years back to get textured look on a new deck with proper instruction. Applied Primer first and then product to get maximum durability but still last week **when I cleaned deck with just a regular hose there is lot of paint that chipped away**. I used thick and expensive product to save myself from putting them again for 4-5 years. When i called Rustoleum support they asked me to re coat it....If i have to recoat it every 2 years i should use some other cheaper stain instead.[30]

---

(RockSolid 20X)

**Don't buy this** (1 star rating)
Doesn't cover the amount of area specified, takes forever to apply. Looked good last summer. Peeling off like old wallpaper now. Awful awful awful. Hopefully it didn't do too much damage to my deck. And yes, I did everything as was directed for best results. Absolute crap. Home Depot should be ashamed to sell this stuff.[31]

---

(RockSolid 20X)

**Totally unacceptable** (1 star rating)
If you have a perfectly new smooth deck so you can use a roller it might be adequate. But if you have stairs or a small area where you cannot use a roller this paint is worse than useless. It does not cover. You cannot fill in wood grain or nail holes. If you try to go back over an area to improve the coverage it just takes off what youve already applied. How can anything so thick cover so inadequately? Furthermore if the unused paint has set more than a couple days it separates and

---

[29] THE HOME DEPOT, *4 Gal. White Exterior 20X Deck Resurfacer,*
https://www.homedepot.com/p/Rust-Oleum-RockSolid-4-Gal-White-Exterior-20X-Deck-Resurfacer-319609/307428233 (last visited May 4, 2021).

[30] THE HOME DEPOT, *4 Gal. White Exterior 20X Deck Resurfacer,*
https://www.homedepot.com/p/Rust-Oleum-RockSolid-4-Gal-White-Exterior-20X-Deck-Resurfacer-319609/307428233 (last visited May 4, 2021).

[31] Tvberg, Comment to *Rust-Oleum RockSolid* (1 gal. Kensington Exterior 20X Deck Resurfacer), https://www.homedepot.com/p/reviews/Rust-Oleum-RockSolid-1-gal-Kensington-Exterior-20X-Deck-Resurfacer-319387/307428110/5 (last visited Oct. 20, 2021).

has to be taken back to the store to be re-shaken. I have used your restore products happily for several years and loved it. I will never buy this Rock solid product again.[32]

99.     Below are pictures from the internet taken by dissatisfied consumers who applied the RockSolid Products to their decks or other structures, which have been ruined or left in disrepair by the product[33,34,35]:

---

[32] https://www.walmart.com/ip/Rust-Oleum-RockSolid-Tint-Base-Deck-Resurfacer/929539751?wmlspartner=wlpa&selectedSellerId=13047&adid=2222222222208577 1948&wmlspartner=wmtlabs&wl0=e&wl1=o&wl2=c&wl3=74698139644687&wl4=pla-4578297716889923&wl5=&wl6=&wl7=&wl10=Walmart&wl11=Online&wl12=929539751_1 0000013494&wl14=rust-oleum%20rocksolid%20deck%20resurfacer%20reviews&veh=sem&msclkid=8dab2373f56a17 61025342023cb9b25e&gclid=8dab2373f56a1761025342023cb9b25e&gclsrc=3p.ds

[33] *See* https://www.homedepot.com/p/Rust-Oleum-RockSolid-1-Gal-White-Exterior-6X-Deck-Coat-319669/307428066#overlay (last visited Oct. 20, 2021).

[34] https://www.deckstainhelp.com/rust-oleum-deck-restore-review-updated/.

[35]https://www.homedepot.com/p/reviews/Rust-Oleum-RockSolid-1-gal-Kensington-Exterior-20X-Deck-Resurfacer-319387/307428110/5#overlay.







## Customer Images (9 of 17)                                    Close ✕

### Sorry, can't recommend this
★☆☆☆☆

by KB on June 14, 2021

First of all, it's crazy expensive. But....after doing some research and talking to a local painter, it came fairly highly recommended. Unfortunately that was not my experience. My deck was old and covered with several layers of old paint, so I had it blasted to get down to clean wood. After they cleaned it, I washed it with the Rocksolid deck wash and allowed it to dry completely which happened fast since it sits in the sun. I primed it twice because the first coat soaked in quickly and waited until the next day to paint. I used a tarp on my railings to keep any dew off, but there was none and no purple-ish color so it should've been dry. Then came the application, it went down on a cloudy day, so the deck wasn't hot

**Images in This Review**



100.   Rust-Oleum's response to consumer complaints about failed RockSolid Products is often to blame them for improper application—even when consumers indicate application was proper—and simply offer a purchase price refund or offer to replace defective Products with more defective Products. These offers are unacceptable to consumers, as Rust-Oleum does not compensate consumers for the time they waste applying the Products and attempting to remove the products when they inevitably fail, and the monetary expenses incurred when the defective Products damage consumers' underlying decks and other structures, including the cost to replace deck boards or even full decks.

101.   Rust-Oleum's limited warranty for its Products is disclosed on the exterior product labeling in small text, and provides, in pertinent part:

> **LIMITED WARRANTY:** Rust-Oleum Corporation guarantees product performance for the product in this can only as long as you own or reside in your home when our product was applied according to the label directions. You will receive as your exclusive remedy either a refund of the original purchase price or replacement with a product of equal value. We do not guarantee the product against factors beyond our control, such as damage to the

product by others, poor condition of the substrate, structural defects, improper application, etc. We will not be responsible for labor or the cost of labor for removal or application of any product, or replacement of any wood structure.

102.   In its technical data sheets for the Products, Rust-Oleum states that it "can guarantee these products only to conform to our standards of quality, and our liability, if any, will be limited to replacement of defective materials."[36]

103.   Putting aside that Rust-Oleum does not actually adhere to its purported warranty limitation that its "liability . . . will be limited to replacement of defective materials"—indeed, it offers refunds to some customers—its "exclusive remedy" limitation is unconscionable and fails under U.C.C. § 2-302. This remedy does not make Plaintiff and other consumers whole for labor and lost time, as well as the damage to their structures which are damaged by the Products.

## CLASS ACTION ALLEGATIONS

104.   Plaintiff brings this lawsuit as a class action under Federal Rule of Civil Procedure 23, on behalf of himself and all others similarly situated.

105.   Plaintiff seeks to represent the following Nationwide Class:

**Nationwide Class**
All persons residing in the United States and its territories that have purchased, not for resale, Rust-Oleum RockSolid Deck Start Wood Primer, RockSolid 2X, RockSolid 6X, or RockSolid 20X products.

106.   In the alternative, Plaintiff seeks to represent the following class:

**California Class**
All persons residing in the state of California that have purchased, not for resale, Rust-Oleum RockSolid Deck Start Wood Primer, RockSolid 2X, RockSolid 6X, or RockSolid 20X products.

---

[36] *See, e.g.,* Rust-Oleum, *RockSolid 2X Solid Stain,* https://www.rustoleum.com/-/media/DigitalEncyclopedia/Documents/RustoleumUSA/TDS/English/CBG/Rocksolid/RSD-38_RockSolid_2X_One_Coat_TDS.ashx (last visited Oct. 19, 2021).

107.    The above defined classes are referred to as the "Class" or "Classes." Plaintiff reserves the right to modify the class definitions as discovery in this action progresses.

108.    Excluded from the Classes are Rust-Oleum, any entity in which Rust-Oleum has a controlling interest or which has a controlling interest in Rust-Oleum, and Rust-Oleum's legal representatives, assigns and successors. Also excluded are the judge(s) to whom this case is assigned and any member of the judge's immediate family.

109.    Class members seek relief under both Rule 23(b)(2) and (b)(3). Specifically, Class members who need to replace decking or patio material and/or repair decks and patios and other surfaces or property seek to have the Court declare any limits on full recovery by the class members to be unenforceable and otherwise null and void. This relief is based solely upon Rust-Oleum's past and current systematic practices and policy of limiting remedies of the class members, and thus declaratory relief is thus appropriate for the Class as whole. Under Rule 23(b)(3), the central issues for each and every class member are the same: whether the Products have the propensity to prematurely fail, whether Rust-Oleum acted unlawfully and deceitfully, and whether the Class is entitled to common remedies.

110.    **Numerosity:** The number of persons who are members of the Class is so numerous that joinder of all members in one action is impracticable. The exact number of Class members is unknown. Due to the nature of the trade and commerce involved, as well as the number of complaints by consumers about the problems alleged herein, Plaintiff believes the Classes consist of tens of thousands of consumers.

111.    **Commonality and Predominance:** Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Rust-Oleum

complained of herein were generally applicable to the entire Class. These legal and factual questions include, but are not limited to:

- whether Rust-Oleum's marketing of the Products was false, deceptive, and/or misleading to reasonable consumers;

- whether Rust-Oleum's conduct was unfair, unlawful, and/or fraudulent, and violated state consumer protection laws;

- whether the Products are unfit for their ordinary purpose of providing lasting protection to deck and patio surfaces and related structures;

- whether the Products are defective and susceptible to premature failure;

- whether Rust-Oleum knew or should have known of the defective nature of the Products;

- when Rust-Oleum discovered that the Products are susceptible to premature failure;

- whether Rust-Oleum disclosed knowledge that the Products are susceptible to premature failure;

- whether information about the defective and flawed nature of the Products, and their propensity to fail, was material to consumers;

- whether Rust-Oleum's marketing and advertising representations about the qualities of the Products created warranties;

- whether the Products failed to perform as warranted;

- whether Rust-Oleum breached express and implied warranties;

- whether Rust-Oleum was unjustly enriched by the sale of defective Products;

- whether any limitations and terms in Rust-Oleum's warranties and any terms and conditions are unconscionable and unenforceable;

- whether, and to what extent, Plaintiff and the Class suffered damages as a result of Rust-Oleum's conduct; and

- whether Defendant should be declared financially responsible for notifying all Class members about the Products' propensity to prematurely fail and for all damages associated with application of the product on Class members' decks, patios, and similar property/structures.

112.  All questions as to the representations and publicly disseminated advertisements and statements attributable to Rust-Oleum at issue herein are similarly common. A determination of Rust-Oleum's knowledge regarding the misleading and deceptive nature of the statements made and alleged herein on websites, brochures, advertisements, commercials, product labels, and warranties will be applicable to all members of the Class. Further, whether Rust-Oleum violated any applicable state laws and pursued the course of conduct complained of herein, acted intentionally or recklessly in engaging in the conduct described herein, and the extent of the appropriate measure of injunctive and declaratory relief, damages, and restitutionary relief are common questions to the Class. Common questions of fact and law outweigh any potential individual ones.

113.  **Typicality**:  Plaintiff's claims are typical of the claims of members of the Class. Plaintiff and all Class members were injured through Rust-Oleum's uniform misconduct and assert identical claims against Rust-Oleum arising from a uniform course of conduct. Plaintiff, like all members of the Class, has suffered damages from the use of defective Products.

114. **Adequacy of Representation:** Plaintiff's interests are aligned with those of the Classes he seeks to represent, and Plaintiff will fully and adequately represent and protect the interests of the Class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, including complex consumer fraud and product defects litigation. Plaintiff has no interests that are antagonistic, contrary to, or in conflict with those of the Class. The interests of Class members are well-represented by Plaintiff and their counsel.

115. **Superiority:** A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class members' claims. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class members individually to effectively redress Rust-Oleum's wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
**Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.***
**(On Behalf of Plaintiff and the Nationwide Class)**

116. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

117. There is an actual controversy between Rust-Oleum and Plaintiff concerning, *inter alia*:

a. Whether the Products are defective thus causing them to fail;

b. Whether Rust-Oleum knew or should have known of the defects;

c. Whether Rust-Oleum misrepresented the nature and quality of the Products;

d. Whether Rust-Oleum marketed the Products as a superior, durable, weather resistant deck resurfacing products that properly adhere to structures and are capable of revitalizing and extending the life of decks and other structures to which the Products are applied;

e. Whether Rust-Oleum's marketing of Products was false, deceptive, unfair, and/or misleading to reasonable consumers;

f. Whether Rust-Oleum concealed and/or omitted the defective qualities associated with Products;

g. Whether the Products are unfit for their ordinary purposes;

h. Whether Rust-Oleum knew that the Products were susceptible to premature failure;

i. Whether disclosure of the Products' propensity to degrade and fail is material to reasonable consumers;

j. Whether Rust-Oleum was unjustly enriched by the sale of the defective Products;

k. Whether Rust-Oleum breached express and implied warranties;

l. Whether any warranty limitations are unconscionable and void;

m. Whether Rust-Oleum acted fraudulently, deceptively, or in an unfair manner in handling warranty claims;

     n.     Whether Plaintiff and Class members sustained damages and the proper measure thereof; and

     o.     Whether Rust-Oleum should be declared financially responsible for notifying class members about the Products' propensity to fail and for all damage to structures to which the defective products are applied.

118.   Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

119.   Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

120.   Accordingly, Plaintiff seeks a declaration that:

     a.     the Products are defective as set forth herein and cause property damage;

     b.     the defective nature of Products is material;

     c.     Rust-Oleum knew or should have known that the Products are prone to premature failure and cause damage to consumers' property;

     d.     the defective nature of the Products requires disclosure, at Rust-Oleum's expense, to all consumers who purchase(d) them;

     e.     Rust-Oleum's offer of only a refund of purchase price or product replacement as a remedy for defective Products is unconscionable;

     f.     Rust-Oleum's warranties fail of their essential purpose and any purported limitation on Rust-Oleum's warranties are unconscionable; and

g.    Defendant is required to review and re-audit all prior warranty claims, including those that were denied in part or in whole.

121.   The declaratory relief requested herein will generate common answers that will settle the parties' controversy. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## COUNT II
### Breach of Express Warranty—Warranty by Representation
### (On Behalf of Plaintiff and Nationwide Class
### or, in the Alternative, the California Class)

122.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

123.   Defendant made numerous representations regarding the Products on product labeling, in product literature, on its website, in stores where the Products are sold, in the Products' technical data sheets, and online at websites for third parties that sell the Products, as alleged herein, constituting warranties regarding the Products. These include, but are not limited to, the following:

**RockSolid Deck Start Wood Primer**

- "simplifies prep and saves time";

- "works with any solid topcoat";

- "promotes topcoat adhesion";

- "covers up to 450 sq. ft. with one coat";

- "one coat required";

- "suitable for use on weathered, worn or previously coated wood decks"; and

- "works on weathered and worn wood."

**RockSolid 2X**

- "ideal for lightly worn decks";

45

- provides "extra durability";

- provides "one coat coverage";

- "superior weather-resistance and weatherproofing protection";

- capable of "resurfac[ing] wood decks, docks, concrete patios and walkways";

- "excellent weather resistance to extend the life of deck and patio surfaces";

- "one coat application";

- "one coat required";

- "excellent water repellency";

- "algae and mildew resistant coating";

- can "transform your deck in one day"; and

- "covers up to 40 sq. ft. with one coat."

**RockSolid 6X**

- can "transform your deck in one day";

- "ideal for moderately worn decks";

- provides "durability" and "enhanced durability";

- provides "one coat coverage";

- "superior weather-resistance and waterproofing protection";

- "fills hairline cracks";

- "covers up to 80 sq. ft. with one coat";

- "one coat required";

- "high build";

- can "resurface moderately worn decks and patios";

- "one coat coverage"; and

- "excellent weather resistance."

**RockSolid 20X**

- can "transform your deck in one day";

- "ideal for heavily worn decks";

- provides "durability" and "maximum durability";

- provides "one coat coverage";

- provides "superior weather-resistance and waterproofing protection";

- "fills 1/4" cracks";

- "covers up to 40 sq. ft. with one coat";

- "one coat required";

- designed to resurface heavily worn decks and patios";

- "one coat coverage"; and

- provides "excellent weather resistance."

124. Plaintiff alleges, *supra*, having been exposed to Rust-Oleum's marketing and advertising representations on product labeling and elsewhere, and that he relied on Rust-Oleum's representations. Furthermore, consumers were uniformly exposed to Rust-Oleum's misstatements and omissions, as its misstatements were contained on the product labeling for the RockSolid Products, and were also present on the websites where consumers purchase the Products.

125. These representations and promises became a part of the basis of the bargain between the parties and created a collective "express warranty" by representation that the Products would conform to Rust-Oleum's affirmations and promises.

126.   Defendant is obligated under the terms of its warranty-by-representation to repair and/or replace Products sold to Plaintiff and consumers as well as to repair and/or replace any structural damages caused by the products.

127.   Defendant has breached the express warranty by supplying Products in a condition that does not satisfy warranty obligations, including because the Products do not conform to Defendant's express warranties, and by failing to compensate Plaintiff and consumers for damages caused by the Products.

128.   Plaintiff has complied with all warranty terms, including application instructions. Defendant, after notice of the problems, has failed to comply with the warranty terms.

129.   Rust-Oleum does not purport to impose any limitations on its warranties by representation, only on its written warranty. Any purported limitations in Rust-Oleum's warranty, anyway, are procedurally and substantively unconscionable and thus fail. Defendant knew or should have known that the Products were defective and susceptible to premature failure. Defendant had unequal bargaining power and misrepresented the Products' reliability, and any limitations on remedies unreasonably favor Defendant and fail Plaintiff's and consumers' reasonable expectations for product performance.

130.   Defendant had actual or constructive notice of the breaches of these warranties, and Defendant has failed to cure these breaches.

131.   To the extent privity is required, Defendant was and is in privity with Plaintiff and Class members. Plaintiff has had sufficient direct dealings with Defendant or its authorized retailers of Products, representatives, and agents to establish privity of contract.

132.   Privity is not required though. Plaintiff and Class members are intended third-party beneficiaries of contracts (including Defendant's express and implied warranties) between

Defendant and its dealers, representatives, and agents; Defendant's advertisements were specifically directed at Plaintiff and Class members; and Defendant's warranties were written for the benefit of Plaintiff and Class members as end users of the Products. Defendant's authorized dealers, representatives, and agents, on the other hand, were not intended to be the ultimate consumers of the Products and have no rights under any warranty; these intermediary entities made no changes to the Products, nor made any additions to (and merely adopted) the warranties issued by Defendant. Accordingly, Defendant is estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

133.    As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and Class members have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to decks, patios, and other structures or property.

134.    Defendant had pre-suit notice of the conduct underlying Plaintiff's warranty claims, including through consumer complaints, previous and ongoing litigation relating to similar products, and this lawsuit.

135.    Furthermore, on May 4, 2021, Plaintiff Stevens sent Defendant a pre-suit demand letter notifying Defendant of and requesting remedies for its breaches of warranties but Rust-Oleum failed to cure.

**COUNT III**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Nationwide Class,**
**or, in the Alternative, the California Class)**

136.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

137.    Plaintiff and Class members formed a contract with Rust-Oleum at the time they purchased the Products. The terms of the contract include the promises and affirmations of fact

and express warranties made by Defendant.

138.    As an express warrantor, manufacturer, and merchant, Defendant had certain obligations pursuant to its warranty under U.C.C. § 2-313.

139.    Namely, Rust-Oleum "guarantees product performance for the product in this can . . . when our product was applied according to the label directions."

140.    The Products that Plaintiff and other Class members purchased did not perform, as was guaranteed by Rust-Oleum, despite strict adherence to the Products' application instructions on the Products' labeling. Defendant breached the terms of its express warranties with Plaintiff and other Class members by not providing suitable and properly functioning Products, which instead fail to adhere and prematurely fail.

141.    As detailed herein, Plaintiff has sought a remedy under Rust-Oleum's warranty, but those remedies are unsuccessful and inadequate. Specifically, Rust-Oleum disclaims any remedy for "labor or the cost of labor for removal or application of any product, or replacement of any wood structure," and instead provides consumers with refunds or more defective Products. These "remedies" are not remedies at all, and Rust-Oleum offers them knowing, at the time of sale, that the Products damage underlying structures and require consumers to incur expenses, their own time and effort, and costs for third-party labor to remove failed Product and/or repair or replace their decks after the Products inevitably fail.

142.    Rust-Oleum knows of the adhesion defect and the damage it causes to underlying surfaces, and the costs consumers incur because of the defect, but forces consumers (including Plaintiff) to shoulder all of those costs. Defendant has actual knowledge that it breached express warranties with Plaintiff and the other Class members.

143.    Rust-Oleum's exclusive remedy under its warranty is unconscionable and fails of

its essential purpose. Any purported limitations in Rust-Oleum's warranty, are procedurally and substantively unconscionable and thus fail. Defendant knew or should have known that the Products were defective and susceptible to premature failure. Defendant had unequal bargaining power and misrepresented the Products' reliability, and any limitations on remedies unreasonably favor Defendant and fail Plaintiff's and consumers' reasonable expectations for product performance.

144. In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendants to disclaim or otherwise limit express warranties in a manner that would exclude or limit coverage for the adhesion defect that was present at the time of sale, which Defendant knew about prior to offering the Products for sale, and which Defendant did not disclose and did not remedy prior to (or after) sale, is unconscionable, and Defendant should be estopped from pursuing such defenses.

145. To the extent privity is required, Defendant was and is in privity with Plaintiff and Class members. Plaintiff has had sufficient direct dealings with Defendant or its authorized retailers of Products, representatives, and agents to establish privity of contract.

146. Privity is not required though. Plaintiff and Class members are intended third-party beneficiaries of contracts (including Defendant's implied warranties) between Defendant and its dealers, representatives, and agents; Defendant's advertisements were specifically directed at Plaintiff and Class members; and Defendant's warranties were written for the benefit of Plaintiff and Class members as end users of the Products. Defendant's authorized dealers, representatives, and agents, on the other hand, were not intended to be the ultimate consumers of the Products and have no rights under any warranty; these intermediary entities made no changes to the Products, nor made any additions to (and merely adopted) the warranties issued by Defendant. Accordingly,

Defendant is estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

147.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and Class members have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to decks, patios, and other structures or property.

148.   Defendant had actual or constructive notice of the breaches of these warranties, and Defendant has failed to cure these breaches. Defendant had pre-suit notice of the conduct underlying Plaintiff's warranty claims, including through consumer complaints, previous and ongoing litigation relating to similar products, and this lawsuit.

149.   Furthermore, on May 4, 2021, Plaintiff Stevens sent Defendant a pre-suit demand letter notifying Defendant of and requesting remedies for its breaches of warranties but Rust-Oleum failed to provide an adequate cure.

## COUNT IV
### Breach of the Implied Warranty of Merchantability
### (On Behalf of Plaintiff and the Nationwide Class,
### or, in the Alternative, the California Class)

150.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

151.   Pursuant to U.C.C. § 2-314, a warranty that goods are merchantable is implied in a contract for sale of goods if the seller is a merchant with respect to the specific goods.

152.   To be "merchantable", goods must be fit for the ordinary purposes for which such goods are used.

153.   Defendant is a "merchant" with respect to acrylic residential coatings like the Products, as Defendant is in the business of manufacturing, designing, supplying, marketing, advertising, warranting, and/or selling the Products.

154.    Defendant impliedly warranted to Plaintiff and Class members that the Products are of a certain quality, free from defects, fit for the ordinary purpose of resurfacing decks and similar structures, and suitable for providing durable protection to decks, patios, and other similar structures form harsh weather conditions.

155.    However, the Products are unfit for ordinary use and are not of merchantable quality as warranted by Defendant at the time of sale because the Products are defective and have the propensity to crack, peel, flake, chip, strip, bubble, and generally prematurely fail and degrade. Before purchase, Plaintiff could not have readily discovered that the Products were not merchantable for use as deck resurfacing and restoration products, were not of the same quality as those generally acceptable in the trade, and did not conform to the quality previously represented.

156.    Defendant has not disclaimed (or sufficiently disclaimed) the implied warranty of merchantability, including any remedy for recovery of labor and costs of labor associated with application and removal of flawed Products.

157.    Defendant has failed to provide adequate remedies under its implied warranties, which have caused the implied warranties to fail their essential purpose, thereby permitting the remedies sought herein under these implied warranties.

158.    Any purported limitations in the Products' limited warranty, including limiting the exclusive remedy to a refund or replacement, are procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302.

159.    Defendant knew or should have known that the Products are susceptible to premature failure; Defendant had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of the Products; and any limitations on remedies unreasonably

favor Defendant and fail Plaintiff's and consumers' reasonable expectations for product performance.

160. Defendant had actual or constructive notice of the breaches of these warranties, and Defendant has failed to cure these breaches.

161. To the extent privity is required, Defendant was and is in privity with Plaintiff and Class members by law or by fact. Plaintiff has had sufficient direct dealings with Defendant or its authorized retailers of the Products, representatives, and agents to establish privity of contract.

162. Privity is not required though. Plaintiff and Class members are intended third-party beneficiaries of contracts (including Defendant's express and implied warranties) between Defendant and its dealers, representatives, and agents; Defendant's advertisements were directed at Plaintiff and Class members; and Defendant's warranties were written for the benefit of Plaintiff and Class members as end users of the Products. Defendant's authorized dealers, representatives, and agents, on the other hand, were not intended to be the ultimate consumers of the Products and have no rights under any warranty; these intermediary entities made no changes to the Products, nor made any additions to (and merely adopted) the warranties issued by Defendant. Accordingly, Defendant is estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

163. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class members have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial, including repair and replacement costs and damages to decks, patios, and other structures or property.

## COUNT V
### Fraud/Fraudulent Concealment
### (On Behalf of Plaintiff and the Nationwide Class
### or, in the Alternative, the California Class)

164. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

165. Defendant misrepresented and concealed or suppressed material facts concerning the performance and quality of the Products. Specifically, Rust-Oleum knew (or should have known) that the Products are prone to premature failure despite proper use and application, which it would have been revealed to it through rigorous pre-release testing of the Products alleged herein. A reasonable inference of pre-sale knowledge of the adhesion defect is also supported by the level of complaints received by Rust-Oleum from consumers concerning Product failure and the adhesion issues, coupled with other litigation about its similar water-based acrylic deck coating products (marketed under the predecessor line "Restore") that also experience adhesion failure. These facts, in connection with other indications of pre-sale knowledge of the defect, make it more likely than not that Rust-Oleum would have learned of the adhesion defect prior to sale during the product testing phase.

166. Rust-Oleum knew, at the time it sold Products to Plaintiff and Class members, that its advertising and marketing representations were false. However, Rust-Oleum failed to disclose this information prior to or at the time it sold the Products, which was material to their purchasing decision. Defendant did so in order to boost sales of the Products and profits in general. It also did so because it intended consumers, like Plaintiff, to rely upon its positive product marketing and advertising in deciding to purchase the Products.

167. Plaintiff and Class members had no way of knowing that Defendant's representations were false and gravely misleading, or that Defendant had omitted imperative details about the Products. Plaintiff and Class members did not, and could not, unravel

Defendant's deception on their own.

168. Defendant had a duty to disclose the true performance of the Products because knowledge of the products' premature failure and the details related thereto were known and/or accessible only to Defendant; Defendant had superior knowledge and access to the facts; and Defendant knew the facts were not known to, or reasonably discoverable, by Plaintiff and the Class. Defendant also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Products, constituting misleading half-truths.

169. On information and belief, Defendant still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the Products and the performance and quality of the Products.

170. Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased the Products (or would have paid less for them). The actions of Plaintiff and the Class were justified, and Plaintiff and Class members were justified in relying upon Defendant's marketing and advertising lies and omissions in deciding to purchase RockSolid Products. Defendant was in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or the Class.

171. Plaintiff and the Class were uniformly exposed to uniform advertising by Defendant—including on the Products' containers and labeling, advertisements and representations in storefront locations where Rust-Oleum sells its Products, and on the websites where Rust-Oleum's Products are sold—before or at the time they purchased the Products. Plaintiff and Class members justifiably relied upon Defendant's representations and omissions regarding the advertised quality and characteristics of the Products in deciding to purchase the

Products. Plaintiff and Class members did not know, and had no reason to know, that the Products were defective prior to purchasing them.

172. Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they did not receive the value of the premium price paid for the Products and the benefit of their bargain, in addition to other monetary losses and property damage sustained.

173. Accordingly, Defendant is liable to Plaintiff and the Class for damages in an amount to be proven at trial.

174. Defendant's acts were malicious, oppressive, and deliberate, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

<u>**COUNT VI**</u>
**Negligent Misrepresentation**
**(On Behalf of Plaintiff and the Nationwide Class**
**or, in the Alternative, the California Class)**

175. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

176. Defendant manufactured, marketed, advertised, sold, and represented the Products to Plaintiff and Class members as a deck resurfacer and restorative product that is durable and of high quality, and charged a premium for those products accordingly.

177. Defendant made numerous material misrepresentations regarding the Products, as alleged herein. Those representations are false and misleading because the Products do not possess these qualities and capabilities, and proper product application actually results in decking and other surfaces being damaged or requiring additional work due to premature failure of the Products

178. Rust-Oleum's marketing representations are false and misrepresent the quality and capabilities of the Products.

179. At the time of sale, Defendant had actual or constructive notice of the Products' propensity to prematurely fail, including through rigorous pre-sale testing as alleged herein, previous product failures and related litigation relating to highly similar products, online complaints, in-store complaints, or through complaints made directly to Defendant over the telephone or through its websites. Thus, Defendant either knew its representations about the Products were false or they had no reasonable grounds for believing that their representations were true.

180. Defendant also failed to disclose, concealed, suppressed and omitted material information concerning the Products, including that the Products are susceptible to cracking, peeling, flaking, chipping, separating, stripping, generally degrading and otherwise prematurely failing, and causing significant damage to the underlying structures to which the Products are applied.

181. Defendant had a duty to disclose this information as set forth herein. Defendant intended that Plaintiff and Class members rely upon Defendant's material misrepresentations and omissions to purchase the Products, and Plaintiff and Class members reasonably relied upon Defendant's false advertising, marketing, and other misrepresentations and omissions in deciding to purchase the Products.

182. As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and Class members have been damaged in an amount to be determined at trial, including repair and replacement costs and/or damages to other property.

## COUNT VII
**Unjust Enrichment/Restitution**
**(On Behalf of Plaintiff and the Nationwide Class**
**or, in the Alternative, the California Class)**

183.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

184.   This claim is pleaded in the alternative to the other claims pleaded herein as permitted under Fed. R. Civ. P. 8(d).

185.   As described herein, Defendant marketed, distributed, and sold the Products as durable deck resurfacing and restoration products with specific qualities, without disclosing the truth about the Products, namely that the Products prematurely fail despite proper application and that they do not possess the represented qualities and characteristics.

186.   As the intended and expected result of its conscious wrongdoing, Defendant has profited and benefited from Plaintiff's and Class members' purchases of the Products.

187.   Plaintiff and Class members conferred a benefit upon, and thereby enriched, Defendant by purchasing Products that are flawed, defective, and prematurely fail or degrade.

188.   Defendant has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendant's misconduct, Plaintiff and the Class were not receiving products of the quality, nature, fitness, or value that had been represented by Defendant, and that reasonable consumers expected.

189.   Defendant has been unjustly enriched by its fraudulent and deceptive withholding of benefits to Plaintiff and the Class, at the expense of these parties.

190.   Equity and good conscience militate against permitting Defendant to retain these profits and benefits.

191.   Defendant's ill-gotten gains should be disgorged, and Plaintiff and members of the proposed Class are entitled to restitution of the profits unjustly obtained by Defendant, with interest.

## COUNT VIII
### Violations of the California Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")
### (On Behalf of Plaintiff and the Nationwide Class
### or, in the Alternative, the California Class)

192.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

193.   The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

194.   Defendant's acts and practices, as alleged herein, constitute unlawful, unfair, and fraudulent business practices, in violation of the UCL.

### Unlawful

195.   Defendant's acts and practices are unlawful in violation of the UCL because they violate the California Consumers Legal Remedies Act, the Song-Beverly Consumer Warranty Act, and other laws discussed herein.

### Unfair

196.   Defendant's conduct is unfair in violation of the UCL because it violates California public policy, legislatively declared in the Song-Beverly Consumer Warranty Act, requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes. Defendant violated the Song-Beverly Act because the Products are unfit for their core function of resurfacing and protecting decks.

197. Defendant acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner. Defendant engaged in unfair business practices and acts in at least the following respects:

- Defendant promoted and sold its Products it knew were defective and prone to premature failure and degradation;

- Defendant promoted and sold the defective Products knowing that consumers do not expect immediate degradation;

- Defendant failed to disclose that the Products are defective, and represented through advertising, its website, third-party retailer websites, product labeling, and other sources that the Products possess particular qualities that were inconsistent with Rust-Oleum's actual knowledge of the products and that it knew were inconsistent with the products' actual performance;

- Defendant offered replacement product that it knew would result repeated instances of failure, rendering its warranty useless;

- Defendant failed to exercise adequate quality control and due diligence over the Products before placing the products on the market; and

- Defendant minimized the scope and severity of the problems with the Products, refusing to acknowledge that the products are defective and prone to premature failure, failing to provide adequate relief to consumers, and suggesting to consumers that they could try to resolve the problems by simply using replacement Products when Defendant knew that doing so would not be effective.

198.    The gravity of harm resulting from Rust-Oleum's unfair conduct outweighs any potential utility. The practice of selling defective Products without providing an adequate remedy to cure the defect—and continuing to sell the Products and even offer them as replacement products without full and fair disclosure of the defect—harms the public at large and is part of a common and uniform course of wrongful conduct.

199.    The harm from Defendant's conduct was not reasonably avoidable by consumers. The Products suffer from a latent defect, and even after receiving numerous consumer complaints, Rust-Oleum did not disclose the defect. Plaintiff did not know of, and had no reasonable means of discovering, that the Products are defective.

200.    There were reasonably available alternatives that would have furthered Rust-Oleum's business interests of satisfying and retaining its customers while maintaining profitability, such as: (1) acknowledging the defect and providing a fix or reformulation of the Products; (2) adequately disclosing premature failure of the Products to prospective purchasers; (3) extending or otherwise enhancing the warranty for the Products; and (4) offering refunds for the defective Products, compensation for decks or other surfaces that the Products damage, and/or providing suitable non-defective replacement Products.

**Fraudulent**

201.    Defendant's acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, Defendant knowingly misrepresented and concealed material facts related to the Products' performance. Had Rust-Oleum not misrepresented and concealed these facts, Plaintiff Stevens, Class members, and reasonable consumers would not have purchased the Products or would have paid significantly less for them.

202. Rust-Oleum's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer and:

- Defendant knowingly and intentionally concealed from Plaintiff Stevens and Class members that the Products contain a defect, making them prone to failure;

- Defendant volunteered information to Plaintiff Stevens and Class members through advertising and other means that the Products were high-quality, durable, premium products capable of performing as advertised, without disclosing facts that would have materially qualified those partial representations;

- Defendant promoted qualities of the Products, despite knowing the products are defective and prone to premature failure, and failed to correct its misleading partial disclosures.

203. Defendant had ample means and opportunities to alert Plaintiff Stevens and Class members of the defective nature of the Products, including on its website for the Products; in its advertisements of the Products; on the Products' external labeling; and on webpages where consumers can purchase the Products from third-party retailers, such as The Home Depot or Lowe's. Defendant uniformly failed to disclose that the Products are defective, do not properly adhere to surfaces, and prone to premature failure. Had Defendant disclosed that the Products are defective, Plaintiff Stevens and Class members would not have purchased the Products, would not have purchased them at the prices they did, or would have returned the products during the respective buyer's remorse periods.

204. Rust-Oleum was under a duty to disclose the defect because of its exclusive knowledge of the adhesion defect before selling the Products and because it made partial representations about the Products without disclosing the defect.

205. Plaintiff Stevens and Class members suffered injury in fact, including lost money or property and lost time spent on labor, as a result of Defendant's unlawful, unfair, and fraudulent acts and omissions.

206. Through its unlawful, unfair, and fraudulent conduct, Defendant acquired Plaintiff's and Class members' money either directly or as passed on by resellers of Products.

207. Damages alone are not sufficient to remedy Defendant's alleged misconduct. Only an injunction or similar forward-looking relief requiring Defendant to make corrective disclosures about the capabilities of the Products in advertising and marketing materials will prevent future harm to Plaintiff Stevens and members of the Class resulting from Defendant's wrongdoing.

208. Plaintiff Stevens alleges that he would consider buying additional Rust-Oleum RockSolid deck coating products in the future, but would not do so unless the RockSolid advertising, labeling, and other disclosures and statements regarding the Products are accurate.

209. Plaintiff Stevens and Class members accordingly seek appropriate relief, including (1) restitution under the UCL and (2) such orders or judgments as may be necessary to enjoin Rust-Oleum from continuing its unfair, unlawful, and fraudulent practices. Plaintiff Stevens also respectfully seeks reasonable attorneys' fees and costs under applicable law, including under Code of Civil Procedure section 1021.5.

## COUNT IX
### Violations of the California Consumers Legal Remedies Act
### Cal. Civ. Code §§ 1750, *et seq.* ("CLRA")
### (On Behalf of Plaintiff and the California Class)

210. Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

211.    The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale of goods or services to any consumer."

212.    Defendant Rust-Oleum is a "person" within the meaning of California Civil Code sections 1761(c) and 1770, and provided "goods" within the meaning of sections 1761(a) and 1770.

213.    Defendant's acts and practices, as alleged in this complaint, violate California Civil Code sections 1770(a)(5), (7), and (9) because they include unfair and deceptive acts and practices in connection with transactions—the sale of the defective Products.

214.    Defendant's conduct violates at least the following enumerated CLRA provisions:

- § 1770(a)(5): representing that goods have characteristics, uses, benefits, or quantities which they do not have;

- § 1770(a)(7): representing that goods are of a particular standard, quality, or grade, if they are of another; and

- § 1770(a)(9): advertising goods with intent not to sell them as advertised.

215.    Through its design, development, and pre-release testing of the Products, as well as through consumer complaints and previous and ongoing litigation concerning its similar water-based acrylic deck resurfacing products, Defendant knew or should have known that the Products are defective and prone to premature failure.

216.    Defendant was under a duty to disclose that the Products are defective because it had superior knowledge of the defect—principally through its research and rigorous pre-release testing as alleged herein, and supported by the above-mentioned prior and ongoing litigations and consumer complaints about the Products immediately after and subsequent to the Products'

release—and because it made partial, materially misleading representations about the Products' quality and performance.

217.    Defendant had ample means and opportunities to alert Plaintiff and Class members of the defective nature of the Products, including on its website for the products; in its advertisements of the Products; on the Products' external labeling; and on webpages where consumers can purchase Products from third-party retailers, such as The Home Depot or Lowe's. Despite its exclusive knowledge and opportunities to disclose the Products' defect and premature failure, Defendant failed to disclose the defect to Plaintiff Stevens and Class members either prior to purchase or before Plaintiff Stevens' and Class members' respective buyer's remorse periods expired.

218.    Rust-Oleum's misrepresentations and omissions were material. Had Plaintiff and Class members known that the Products are defective, they would not have purchased the Products, would not have purchased them at the prices they did, or would have returned the Products during their respective buyer's remorse periods.

219.    Under California Civil Code section 1782(a), on his own behalf and on behalf of the Class, Plaintiff sent a CLRA notice on May 4, 2021 to Defendants, pursuant to the requirements of the CLRA. Rust-Oleum did not respond to Plaintiff Stevens' notice and failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of Plaintiff Stevens' notice pursuant to § 1782 of the Act. Accordingly, Plaintiff Stevens seeks actual, punitive, and statutory damages as a result of Rust-Oleum' violations of the CLRA.

220.    Pursuant to Civil Code § 1782(d), Plaintiff Stevens also seeks a Court order enjoining the above-described wrongful acts and practices of Defendant.

221.   Plaintiff Stevens further seeks an order awarding costs of court, expenses, and attorneys' fees under Cal. Civ. Code § 1780(e).

222.   In accordance with California Civil Code § 1780(d), Plaintiff Stevens' CLRA venue declaration is attached as **Exhibit A** to this complaint.

<u>**COUNT X**</u>
**Violations of the California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et. seq.* ("FAL")**
**(On Behalf of Plaintiff and the California Class)**

223.   Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

224.   The FAL provides, in pertinent part:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever . . . any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

Cal. Bus. & Prof. Code § 17500.

225.   Defendant violated the FAL by using false and misleading statements, and material omissions to market and sell the Products. Defendant promoted false and misleading statements and representations through advertising, marketing, and other publications and channels. Defendant knew, or through the exercise of reasonable care should have known, that its statements and material omissions were untrue and misleading to Plaintiff and Class members.

226.   Defendant's misrepresentations and omissions regarding the performance, quality, reliability, and other characteristics of the Products as set forth herein were material and likely to (and did) deceive reasonable consumers.

227.    Plaintiff and Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's material misstatements and omissions. In purchasing the Products, Plaintiff and Class members relied on the false advertising, misrepresentations, and/or omissions of Defendant alleged herein.

228.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still being perpetuated and repeated nationwide.

229.    Plaintiff, individually and on behalf of the Class, requests that this Court enter such orders or judgments as may be necessary to prohibit Defendant from continuing its pattern of using misleading statements and omissions and to restore to Plaintiff and Class members' the money Defendant acquired through such statements and omissions, including restitution or restitutionary disgorgement, and for such other relief set forth below.

## <u>COUNT XI</u>
### Violations of the Song-Beverly Consumer Warranty Act
### Cal. Civ. Code §§ 1792, *et. seq.*
### (On Behalf of Plaintiff and the California Class)

230.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

231.    Plaintiff Stevens is a "buyer" within the meaning of Cal. Civ. Code § 1791(b), as he purchased Products in California.

232.    Rust-Oleum is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j). Rust-Oleum manufactured the Products and directed and was involved in all stages of the production and manufacturing processes.

233.    The Products are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

234.   Defendant impliedly warranted to Plaintiff that the Products he purchased were "merchantable" under Cal. Civ. Code § 1791.1(a) and 1792.

235.   Defendant breached the implied warranty of merchantability by producing, manufacturing, and selling the Products that were not of merchantable quality and unfit for the ordinary purposes for which deck resurfacing products are used, and would not pass without objection in the deck resurfacing products trade.

236.   The defect in the Products is latent. The defect existed in the product at and after the time of sale. Accordingly, any subsequent discovery of the defect beyond that time does not bar an implied warranty claim under the Song-Beverly Act.

237.   Any attempt by Rust-Oleum to disclaim its implied warranty obligations under the Song-Beverly Act is ineffective due to its failure to adhere to Cal. Civ. Code § 1792.3 and 1792.4. Those sections provide that, in order to validly disclaim the implied warranty of merchantability, a manufacturer must "in simple and concise language" state: "(1) The goods are being sold on an 'as is' or 'with all faults' basis. (2) The entire risk as to the quality and performance of the goods is with the buyer. (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair." Defendant's attempted warranty disclaimer does not conform to sections 1792.3 and 1792.4.

238.   As a direct and proximate cause of Rust-Oleum's breaches of the Song-Beverly Consumer Warranty Act, Plaintiff and Class members have been damaged in an amount to be proven at trial.

239.   Plaintiff Stevens seeks costs and expenses, including reasonable attorneys' fees, under Cal. Civ. Code § 1794.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and on behalf of all others similarly situated, prays for relief and judgment to be entered upon Defendant Rust-Oleum Corporation as follows:

A.  Enter an order certifying the proposed class, designating Plaintiff and his counsel to represent the proposed Class;

B.  Declare that Defendant is financially responsible for notifying all Class members of the problems with the Products alleged herein;

C.  Declare that any limitations on Class members' remedies under any warranties are unconscionable and void;

D.  Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from sales of the Products, or order Defendant to make full restitution to Plaintiff and the Class members;

E.  Require Defendant to re-audit and reassess all prior warranty claims regarding the Products, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds;

F.  Award economic and compensatory damages on behalf of Plaintiff and the Class members;

G.  Award actual damages, treble damages, and/or any other form of monetary relief provided by law;

H.  Award punitive or exemplary damages, as applicable;

I.  Enter an Order enjoining Defendant from its unlawful conduct, for declaratory relief, all other equitable relief as the Court deems proper;

J.  Award Plaintiff and the Class pre-judgment and post-judgment interest as allowed under the law;

K.  Award Plaintiff and the Class reasonable attorney's fees and costs of suit; and

L.  Award such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims so triable.

Dated:  November 5, 2021                        Respectfully submitted,

*/s/ Katrina Carroll*
KATRINA CARROLL
*katrina@lcllp.com*
KYLE A. SHAMBERG
*kyle@lcllp.com*
**LYNCH CARPENTER LLP**
111 W. Washington Street, Suite 1240
Chicago, Illinois 60602
312.750.1265 (*telephone*)

ROBERT R. AHDOOT (*pro hac vice* to be filed)
*rahdoot@ahdootwolfson.com*
CHRISTOPHER STINER (*pro hac vice* to be filed)
*cstiner@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
310.474.9111 (*telephone*)
310.474.8585 (*facsimile*)

ANDREW W. FERICH (*pro hac vice* to be filed)
*aferich@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
310.474.9111 (*telephone*)
310.474.8585 (*facsimile*)

*Attorneys for Plaintiff and the Proposed Classes*